# CHARLESTON.

STATE *v.* RALPH FOX

(No. 5717)

Submitted February 1, 1927. Decided February 8, 1927.

CRIMINAL LAW—INTOXICATING LIQUORS—*Evidence As to Place of Sale of Intoxicating Liquors Held to Show Venue in County of Trial; Evidence Held to Sustain Conviction For Sale of Intoxicating Liquor.*

A case where the venue is sufficiently proven and the verdict is supported by the evidence.

(Criminal Law, 16 C. J. §§ 1572, 1574; Intoxicating Liquors, 33 C. J. §§ 510, 525.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Monongala County.

Ralph Fox was convicted of the sale of intoxicating liquor, and he brings error.

*Affirmed.*

*R. Shirley Taylor* and *Frank P. Corbin*, for plaintiff in error.

WOODS, JUDGE:

The defendant, Ralph Fox, was tried before the circuit court of Monongalia county on an indictment alleging that he did unlawfully manufacture, sell, offer, etc., intoxicating liquors, in said county. The bill of particulars, demanded of the State, limited the transaction to a sale and delivery of intoxicating liquor to one Wayne Baer, and that said sale was made at or near the home of the defendant, in the vil-

lage of Granville, Monongalia county. The jury returned a verdict of guilty, and, at a later day, the court imposed a fine and sentenced the defendant to imprisonment in the county jail. From that judgment the defendant prosecutes this writ.

The main question raised in this Court is whether the sale, if proven, was shown to have been made in Monongalia county. The State introduced three witnesses—Wayne Baer, the party claiming to have bought the liquor; Mike Hines, a deputy sheriff of Monongalia county; and Tom Adams, a constable of said county. It is shown that defendant lived at his father's home, in the village of Granville, Monongalia county. Wayne Baer testified that he was talking to the defendant and Lige Robinson shortly after midnight, March 3, 1925, at the restaurant "down at the Uneeda Hotel, corner of Pleasants Street and University Avenue" (probably meaning Morgantown); that all three of them decided to take a little ride down the hollow; that they stopped at the Granville Provision Store, turned around and faced the car towards the cement road; that "Ralph and I went up above his house and on the way up I was talking to Ralph about wanting to buy some whiskey off of him, and we got up to where the whiskey was and he uncovered it and I picked it up and started down the hill with it and two constables ordered me to drop the can;" that he got the liquor back on the hill off to the right of defendant's house; that defendant took him to the place the can was concealed, uncovered it, pulled it out, and said, "Here, take the can down to the car;" that the price of the liquor was $10.00 a gallon; that defendant said: "Here's the whiskey; take it. I want to go home and go to bed as I don't feel very well on account of having to go to jail tomorrow at Fairmont;" that he (Baer) was to pay for the liquor after he had sold it; that he (Baer) had just passed the gate at defendant's house, and the defendant had entered the yard through the gate, when the officers caught them. The can of liquor was identified by this witness, and introduced in evidence. Tom Adams, constable, after testifying that he had seen defendant on the morning of March

3rd, near his father's home, near Granville, in Monongalia county, explained: "Mr. Crosby, Mr. Hines and myself heard that there was some liquor in his father's house and we had a warrant to search his father's house and we went up and went into the yard and there's a rose bush or some kind of a bush there, and we heard somebody talking, coming down the road, and we got behind this bush and Mr. Baer and Ralph Fox came down the road and stopped in front of the gate of Mr. Ralph Fox's home and I heard Mr. Baer bid Mr. Fox goodnight and said he would see him later, and we stepped out and threw our flashlights on them. Mr. Baer had a five gallon can of moonshine on his shoulder and he threw it and tried to burst the can and run, and Mr. Fox jumped in on the porch." This same officer heard Baer say "I will see you later about this" or "pay you later," or something to like effect. After Adams fixed the time from one to three o'clock in the morning, the prosecuting attorney concluded the direct examination of this witness with the question: "I believe you stated that this was in Monongalia county, West Virginia?" To this the witness replied, "Yes, sir." Mike Hines, deputy sheriff, testified that he heard Baer say, "Goodnight; as soon as I sell this I will come back and pay you." It is significant that this remark was made before Baer and Fox became aware of the presence of the officers. Hines' other testimony supports that of Adams. On cross-examination, Adams stated that he left defendant and Baer in custody of Hines and that he went up on the hill and looked all around in the direction they came from to see if he could find any more liquor. Hines refers to this hill as Hess Hill. Fox, defendant, denies the auto ride with Baer, stating that Lige Robinson brought him out of Morgantown shortly after midnight to the foot of the hill in his Auburn car, and that he was walking up to his (defendant's) house to get his key to his Buick so that Lige could use the Buick while he (defendant) was away in jail at Fairmont; that he had just reached the gate when he passed Baer coming down the road with a can on his shoulder; that at this time the officers threw their lights on them. Defendant denies a sale of liquor to Baer. Lige Robinson admits that he and Fox were "up

town'' (Morgantown) after midnight, March 3rd, but states that he does not recall whether he saw Wayne Baer or not.

There is sufficient evidence in the record to support the jury's finding that a sale was made in the vicinity of defendant's home—whether on the hill or in the road in front of his house. So, we pass to the question of venue.

Positive testimony of one credible witness, not positively contradicted, is sufficient proof of venue. *Speight* v. *State*, 80 Ga. 512; *Laydon* v. *State*, 52 Ind. 459. It is intimated that Constable Adams' answer ''Yes, sir,'' to the question ''I believe you stated that this was in Monongalia county, West Virginia?''—if taken in connection with what preceded it— indicates that the mind of the witness was upon a former answer given by him at the beginning of his testimony, in which he stated that he saw Ralph Fox near his father's house, near Granville, Monongalia county, and that said answer does not sufficiently indicate that it was intended to refer to witness' testimony as to what he had heard, the direction and locality from which the sounds came, and what he saw. A reasonable interpretation of this answer, in our opinion, is that the witness Adams intended his affirmative reply to refer to the vicinity covered by his testimony—the immediate hills and hollows. All of the State's evidence is to the effect that the sale took place at or near the Fox home. Defendant never questioned the court's jurisdiction over the alleged offense in any way whatsoever until after the jury had returned their verdict. We think that the venue was clearly established by the statement of witness Adams, when read in the light of all the other testimony of the State.

While the petition to this court makes a general statement that the trial court erred in giving certain instructions, we find that the attention of such trial court was not directed to this point on a motion for a new trial. It was not pointed out there, nor even in this court, wherein such instructions were erroneous. Under our decisions we cannot consider them. *State* v. *Noble*, 96 W. Va. 432; *Coal Company* v. *Machine Works*, 94 W. Va. 300; *Bartlett* v. *Bank*, 77 W. Va. 329; *Halstead* v. *Horton*, 38 W. Va. 727; *Gregory* v. *Railway Com-*

*pany,* 37 W. Va. 606; *State* v. *John,* 103 W. Va. 148.

Perceiving no reason for disturbing the judgment, it is therefore affirmed.

*Affirmed.*